## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SPOT MOBILE INTERNATIONAL, LTD.,

                Plaintiff,

    -against-

LV ADMINISTRATIVE SERVICES, INC., VALENS
OFFSHORE SPV II, CORP., VALENS U.S. SPV I,
LLC, LAURUS MASTER FUND, LTD. (In
Liquidation), JOHN A. JENKINS, and DAVID GRIN,

                Defendants.

Case No. 12-CV-1344-CM

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
## LV ADMINISTRATIVE SERVICES, INC., VALENS OFFSHORE SPV II, CORP.,
## VALENS U.S. SPV I, LLC, LAURUS MASTER FUND, LTD. (In Official Liquidation),
## and DAVID GRIN'S MOTION TO DISMISS THE COMPLAINT

Randall R. Rainer
Adam M. Bialek
WOLLMUTH MAHER &
DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300

*Attorneys for Laurus Master Fund,
Ltd. (In Official Liquidation)*

Hillary Richard
Jessica R. Holloway
Matthew Popowsky
BRUNE & RICHARD LLP
One Battery Park Plaza
New York, New York 10004
(212) 668-1900

*Attorneys for LV Administrative
Services, Inc., Valens Offshore
SPV II, Corp., Valens U.S. SPV I,
LLC, and David Grin*

Dated:  New York, New York
        March 27, 2012

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................2

ARGUMENT .............................................................................................................7

I.      SPOT MOBILE HAS FAILED TO ALLEGE FACTS SUFFICIENT TO
        SUSTAIN ITS BREACH OF CONTRACT CLAIM AND THAT CLAIM MUST
        BE DISMISSED ..............................................................................................7

II.     SPOT MOBILE FAILS TO STATE A CLAIM FOR FRAUD ........................12

        A.      Spot Mobile's Failure to Meet the Heightened Pleading Requirements of
                Fed. R. Civ. P. 9(b) and the PSLRA is Fatal to its Claims ....................13

        B.      **Spot Mobile's Failure to Allege Scienter with the Particularity
                Required Under the PSLRA Mandates Dismissal of its Fraud Claims** ..........15

        C.      **Spot Mobile's Fraud Claims Fail as a Matter of Law** .....................17

                1.      Spot Mobile's Misrepresentation Claim is Redundant of its Breach
                        of Contract Claim and Should Be Dismissed...............................17

                2.      Defendants Were Under No Duty to Disclose the Indemnification
                        Agreement............................................................................18

                3.      Spot Mobile Has Failed to Allege Damages...............................18

III.    SPOT MOBILE LACKS STANDING TO SUE FOR CORPORATE WASTE
        AND SELF-DEALING AND IN ANY EVENT, HAS FAILED TO
        SUFFICIENTLY PLEAD SUCH A CLAIM ...................................................19

IV.     SPOT MOBILE'S AIDING AND ABETTING CLAIM MUST BE DISMISSED ..........21

V.      BECAUSE SPOT MOBILE'S TORT CLAIMS FAIL AS A MATTER OF LAW,
        ITS CONSPIRACY CLAIM MUST ALSO BE DISMISSED.........................23

CONCLUSION.........................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Abu Dhabi Commer. Bank* v. *Morgan Stanley & Co., Inc.,*
 651 F. Supp. 2d 155 (S.D.N.Y. 2009) .............................................................. 12, 15

*Alexander & Alexander of N.Y., Inc.* v. *Fritzen,*
 68 N.Y.2d 968 (1986) ................................................................................ 23

*Alliance Data Sys. Corp.* v. *Blackstone Capital Partners V L.P.,*
 963 A.2d 746 (Del. Ch. 2009),
 *aff'd* 976 A.2d 170 (Del. 2009)....................................................................... 8

*Ashcroft* v. *Iqbal,*
 129 S. Ct. 1937 (2009)................................................................................. 7

*Basic Inc.* v. *Levinson,*
 485 U.S. 224 (1988)................................................................................... 18

*Bell Atl. Corp.* v. *Twombly,*
 550 U.S. 544 (2007)..................................................................................... 7

*Bellino Schwartz Padob Adver., Inc.* v. *Solaris Mktg. Grp., Inc.,*
 635 N.Y.S.2d 587 (App. Div. 1995)................................................................ 8

*Bennett* v. *U.S. Trust Co.,*
 770 F.2d 308 (2d Cir. 1985) ......................................................................... 19

*Black Car & Livery Ins., Inc.* v. *H &W Brokerage, Inc.,*
 813 N.Y.S.2d 751 (App. Div. 2006)................................................................ 8

*Blue Tree Hotels Inv. (Canada), Ltd.* v. *Starwood Hotels & Resorts Worldwide, Inc.,*
 369 F.3d 212 (2d Cir. 2004) ......................................................................... 5

*Buchwald* v. *Renco Grp., Inc. (In re Magnesium Corp. of Am.),*
 399 B.R. 722 (S.D.N.Y. 2009)....................................................................... 21

*Chiste* v. *Hotels.com L.P.,*
 756 F. Supp. 2d 382 (S.D.N.Y. 2010) ............................................................ 11

*Coastal Aviation, Inc.* v. *Commander Aircraft Co.,*
 937 F Supp 1051 (S.D.N.Y. 1996),
 *aff'd* 108 F.3d 1369 (2d. Cir. 1997).................................................................. 7

*Criden* v. *Steinberg,*
 No. 17082, 2000 WL 354390 (Del. Ch. Mar. 23, 2000)........................................ 21

*DiVittorio* v. *Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987) ................................................................. 13

*E\*Trade Fin. Corp.* v. *MarketXT Holdings Corp.*,
    No. 04–12078 (ALG), 2006 WL 2864963 (Bankr. S.D.N.Y. Sept. 29, 2006) ......................... 12

*ECA & Local 134 IBEW Joint Pension Trust of Chi.* v. *JP Morgan Chase & Co.*,
    553 F.3d 187 (2d Cir. 2009) ................................................................. 12

*Emmett Hickman Co., v. Emilio Capano Developer, Inc.*,
    251 A.2d 571 (Del. Super. 1969) ............................................................. 11

*First Bank of the Ams.* v. *Motor Car Funding, Inc.*,
    690 N.Y.S.2d 17 (App. Div. 1999) ........................................................... 17

*Forsythe* v. *ESC Fund Mgmt. Co. (U.S.)*,
    C.A. No. 1091-VCL, 2007 WL 2982247 (Del. Ch. Oct. 9, 2007) ................................. 22

*Ganino* v. *Citizens Util. Co.*,,
    228 F.3d 154 (2d Cir. 2000) ................................................................. 12

*Gladstone Bus. Loan, LLC* v. *Randa Corp.*,
    No. 09 Civ. 4255 (LMM), 2009 WL 2524608 (S.D.N.Y. Aug. 17, 2009) ........................... 23

*Goodrich* v. *E.F. Hutton Grp., Inc.*,
    542 A.2d 1200 (Del. Ch. 1988) ............................................................... 9

*Gregori* v. *90 William St. Dev. Grp. LLC*,
    No. 09 CV 4753 (GBD), 2010 WL 3001979 (S.D.N.Y. July 20, 2010) ............................. 11

*Gurfein* v. *Ameritrade, Inc.*,
    411 F. Supp. 2d 416 (S.D.N.Y. 2006) ......................................................... 14

*Harbor Fin. Partners* v. *Huizenga*,
    751 A.2d 879 (Del. Ch. 1999) ................................................................ 20

*Henneberry* v. *Sumitomo Corp. of Am.*,
    532 F. Supp. 2d 523 (S.D.N.Y. 2007) ......................................................... 18

*H-M Wexford LLC* v. *Encorp, Inc.*,
    832 A.2d 129 (Del. Ch. 2003) ................................................................ 8

*Ho Myung Moolsan Co.* v. *Manitou Mineral Water, Inc.*,
    665 F. Supp. 2d 239 (S.D.N.Y. 2009) ......................................................... 24

*In re Carter-Wallace, Inc. Sec. Litig.*,
    150 F.3d 153 (2d Cir. 1998),
    *aff'd*, 220 F.3d 36 (2d Cir. 2000) ......................................................... 12

*In re Fedders N. Am., Inc.*,
   405 B.R. 527 (Bankr. D. Del. 2009) ...................................................................... 20

*In re MBIA, Inc. Sec. Litig.*,
   700 F. Supp. 2d 566 (S.D.N.Y. 2010) ........................................................ 7, 13, 24

*Ince & Co.* v. *Silgan Corp.*,
   No. 10941, 1991 Del. Ch. LEXIS 20 (Del. Ch. Feb. 7, 1991) ................................. 20

*J.A.O. Acquisition Corp.* v. *Stavitsky*,
   745 N.Y.S.2d 634 (Sup. Ct. 2001) ........................................................................ 17

*Jordan (Bermuda) Inv. Co., Ltd.* v. *Hunter Green Invs. LLC*,
   566 F. Supp. 2d 295 (S.D.N.Y. 2008) ................................................................... 23

*Kalnit* v. *Eichler*,
   264 F.3d 131 (2d Cir. 2001) ................................................................................. 15

*Kirch* v. *Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006) ................................................................................. 23

*Kottler* v. *Deutsche Bank AG*, 607 F. Supp. 2d 447 (S.D.N.Y. 2009) ......................... 24

*Kramer* v. *Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991) ................................................................................... 5

*Lefkowitz* v. *Bank of N.Y.*,
   676 F. Supp. 2d 229 (S.D.N.Y. 2009) ................................................................... 22

*Lujan* v. *Defenders of Wildlife*,
   504 U.S. 555 (1992) .............................................................................................. 23

*Manela* v. *Garantia Banking Ltd.*,
   5 F. Supp. 2d 165 (S.D.N.Y. 1998) ...................................................................... 12

*McMahon* v. *New Castle Assocs.*,
   532 A.2d 601 (Del. Ch. 1987) .............................................................................. 22

*Musalli Factory for Gold & Jewelry* v. *JPMorgan Chase Bank, N.A.*,
   261 F.R.D. 13 (S.D.N.Y. 2009) ............................................................................. 23

*Nat'l Westminster Bank, U.S.A.* v. *Ross*,
   130 B.R. 656 (S.D.N.Y. 1991) .............................................................................. 18

*Official Comm. of Unsecured Creditors* v. *Bay Harbour Master Ltd.* (*In re BH S&B
   Holdings, LLC*),
   420 B.R. 112 (Bankr. S.D.N.Y. 2009),
   *aff'd as modified*, 807 F. Supp. 2d 199 (S.D.N.Y. 2011) ...................................... 22

*Parfi Holding AB* v. *Mirror Image Internet, Inc.*,
    954 A.2d 911 (Del. Ch. 2008) ........................................................................ 20

*Pereira* v. *Farace*,
    413 F.3d 330 (2d Cir. 2005) .......................................................................... 21

*Porrazzo* v. *Bumble Bee Foods, LLC*,
    No. 7:10-cv-04367-CV, 2011 WL 4552306 (S.D.N.Y. Sept. 30, 2011) .................................. 5

*Progressive Cas. Ins. Co.* v. *C.A. Reaseguradora Nacional De Venezuela*,
    991 F.2d 42 (2d Cir. 1993) ............................................................................ 18

*RCN Telecom Servs.* v. *202 Ctr. St. Realty LLC*,
    156 F. App'x 349 (2d Cir. 2005) ..................................................................... 11

*Richelson* v. *Yost*,
    738 F. Supp. 2d 589 (E.D. Pa. 2010) ................................................................ 20

*Romano* v. *Romano*,
    767 N.Y.S.2d 841 (App. Div. 2003) .................................................................. 24

*Rosenblatt* v. *Christie, Manson & Woods Ltd.*, No. 04 Civ. 4205 (PKC),
    2005 WL 2649027 (S.D.N.Y. Oct. 14, 2005) ....................................................... 18

*Ryan* v. *Hunton & Williams*,
    No. 99-CV-5938 (JG), 2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) .............................. 19

*Shah* v. *Wilco Sys.*,
    126 F. Supp. 2d 641 (S.D.N.Y. 2000) ................................................................. 9

*Sharp Int'l Corp.* v. *State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*,
    403 F.3d 43 (2d Cir. 2005) ...................................................................... 21, 23

*Shearin* v. *E.F. Hutton Grp.*,
    652 A.2d 578 (Del. Ch. 1994) ........................................................................ 20

*Shields* v. *Citytrust Bancorp, Inc.*,
    25 F. 3d 1124 (2d Cir. 1994) ......................................................................... 16

*Smith* v. *Fitzsimmons*,
    584 N.Y.S.2d 692 (App. Div. 1992) ................................................................... 8

*Solow* v. *Stone*,
    994 F. Supp. 173 (S.D.N.Y. 1998) ................................................................... 14

*Strasenburgh* v. *Straubmuller*,
    146 N.J. 527 (1995) .................................................................................. 20

*Suez Equity Investors, L.P.* v. *Toronto-Dominion Bank,*
    250 F.3d 87 (2d Cir. 2001) ................................................................. 19

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ......................................................................... 15

*Tesoro Petroleum Corp.* v. *Holborn Oil Co. Ltd.,*
    484 N.Y.S.2d 834 (App. Div. 1985) ................................................ 17

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P.* v. *Wood,*
    752 A.2d 1175 (Del. Ch. 1999) ......................................................... 8

*Weiss* v. *Nw. Broad. Inc.,*
    140 F. Supp. 2d 336 (D. Del. 2001) ............................................... 10

*Wendorf* v. *MCI Telecomms. Corp.,*
    No. 92 Civ. 1836 (KTD), 1993 WL 119785 (S.D.N.Y. Apr. 12, 1993) .................................. 17

*Wolff* v. *Rare Medium, Inc.,*
    210 F. Supp. 2d 490 (S.D.N.Y. 2002) .............................................. 9

*York Linings* v. *Roach,*
    No. 16622-NC, 1999 WL 608850 (Del. Ch. July 28, 1999) ............. 22

Defendants LV Administrative Services, Inc. ("LV"), Valens Offshore SPV II, Corp. ("VOS"), Valens U.S. SPV I, LLC ("VUS"), Laurus Master Fund, Ltd. (In Official Liquidation) ("LMF" and together with LV, VOS, and VUS "Laurus") and David Grin[1] ("Grin" and together with Laurus, the "Laurus Defendants") respectfully submit this memorandum of law in support of their motion to dismiss all claims brought by plaintiff Spot Mobile International, Ltd. ("Spot Mobile") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act (the "PSLRA").[2]

## PRELIMINARY STATEMENT

This nuisance lawsuit was filed a few short months after defendant LV obtained a judgment in New York state court against Spot Mobile for defaulting on a $1.25 million note. While LV seeks to enforce its judgment on that note, Spot Mobile brings this suit, making a litany of nonsensical claims of alleged wrongdoing concerning a transaction to which the Laurus Defendants were not a party and which was never even consummated. Spot Mobile's claims are inadequately pleaded, fail as a matter of law and do not pass the common sense test. Accordingly, they should be dismissed in their entirety.

Spot Mobile lists six separate bases for the Laurus Defendants' purported liability (a seventh applies only to defendant John Jenkins), none of which survives the slightest scrutiny. The breach of contract claim fails because Spot Mobile has not alleged the existence of a

---

[1] Defendant John Jenkins was not served with the complaint until March 16, 2012, and will respond separately.

[2] Defendant LMF is an "exempted company" incorporated under the laws of the Cayman Islands and based in the Cayman Islands. Plaintiff purported to effectuate service of process upon LMF at an office in New York. Although LMF does not intend to contest it, that was not valid service. In the event this action proceeds, however, LMF hereby reserves and does not waive any and all protections available to LMF by virtue of its domicile in the Cayman Islands, including the protections afforded under the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters.

contract between Spot Mobile and any of the Laurus Defendants and, in any event, has not identified any breach of the agreement upon which it is suing. Spot Mobile's fraud claims fail for several independent reasons, including its failure to identify any misstatements or material omissions, failure to plead fraud with particularity, and a failure to identify any cognizable injury caused by any alleged fraud. Spot Mobile has also completely failed to identify any actions by any defendant that would support its claim for corporate waste and self-dealing and, in any event, Spot Mobile lacks standing to bring such a claim. Spot Mobile's aiding and abetting and conspiracy claims fail because the underlying claims on which they are based fail as a matter of law. Finally, all of Spot Mobile's claims must be dismissed because it has not alleged facts that show that Spot Mobile was actually injured by any of the wrongdoing it alleges. Accordingly, Spot Mobile's claims must be dismissed in their entirety.

## BACKGROUND

### *The Share Exchange Agreement*

On October 13, 2009, Blackbird Corporation ("Blackbird"), Rapid Link, Incorporated ("Rapid Link"), and the principal stockholders of each, entered into a reverse merger transaction, whereby control of Rapid Link was to be transferred to the owners of Blackbird (the "Share Exchange Agreement"). (Compl. ¶ 16,[3] Ex. A at 1.[4]) Pursuant to the Share Exchange Agreement, Rapid Link would acquire all of the issued and outstanding shares of Blackbird capital stock and Blackbird would become a wholly owned subsidiary of Rapid Link. (Ex. A § 1.2.) In exchange, the Blackbird principal stockholders would exchange their Blackbird stock

---

[3] Citations in the form "Compl. ¶ __" are to the complaint, filed February 22, 2012.

[4] Citations to Exs. 1-4 are to the exhibits to the Declaration of Jessica R. Holloway, filed herewith. Citations to Exs. A and B are to the exhibits to the complaint. We object to Exhibits A and B to the extent they contain additional pages that are not part of the documents they purport to be, but we rely on them for the purposes of this motion.

for 520,000,000 shares of newly-issued Rapid Link common stock, representing 80% of all Rapid Link common stock, making Blackbird and its shareholders the majority owners of Rapid Link. (*Id.* § 1.3.)  Simultaneously, the operating assets of Telenational Communications, Inc. ("Telenational"), an operating subsidiary of Rapid Link, would be transferred to Blackbird. (*Id.* §§1.5, 1.6(c)(ii).)  In exchange for the 520,000,000 shares of Rapid Link stock and the Telenational operating assets, the newly constituted Rapid Link was to assume $3.1 million of debt owed to Laurus (pursuant to secured notes). (*Id.* § 1.5, Schedule 1.5.)

The Share Exchange Agreement required Rapid Link and Blackbird to cooperate in good faith in efforts to consummate the Share Exchange Agreement. (*Id.*§ 4.2.)  As a condition precedent to both parties' obligation to consummate the transaction, the Share Exchange Agreement required both parties to obtain any third party consents, licenses, permits, waivers, approvals, authorizations or orders necessary to close the transaction, including a list of "Rapid Link Required Consents" attached to the agreement as Schedule 2.5 and a list of "Blackbird Required Consents" attached to the agreement as Schedule 3.3. (*Id.* §§ 5.4, 6.4.)  Both the Rapid Link and Blackbird Required Consents listed regulatory consents that were needed prior to the closing of the transaction. (*Id.* Schedules 2.5, 3.3.)

### *The Amendment to the Share Exchange Agreement*

On or about January 20, 2010, before the transaction contemplated by the Share Exchange Agreement closed, Blackbird, Rapid Link, their principal stockholders, and an affiliate of Blackbird, Mr. Prepaid, Inc. ("Mr. Prepaid") entered into an Amendment to the Share Exchange Agreement (the "Amendment" and, together with the Share Exchange Agreement, the "Amended Agreement"). (Compl. ¶ 17, Ex. B.)  Pursuant to the Amended Agreement, the contemplated transaction was to be split into two parts: a "Closing" at which Blackbird would acquire the common stock of Rapid Link; and a "Subsequent Closing" at which Blackbird

3

(through Rapid Link, which it would then own), would acquire the operating assets of Telenational.  (Ex. B, Definitions, Amended §§ 1.2-1.6.)  At the Closing, Blackbird, the acquirer of Rapid Link, would assume $1.25 million of debt owed to Laurus by Rapid Link.  (*Id.* § 5.8.)  At the Subsequent Closing, an affiliate of Rapid Link – now controlled by Blackbird and its principal stockholders (including Charles Zwebner, Blackbird's majority shareholder) would assume the $1.85 million balance in additional debt owed to Laurus.  (*Id.* §§ 1.5(a), 7.1(i).)  Thus, pursuant to the Amended Agreement, the liability for $1.85 million of the $3.1 million debt owed by Rapid Link would be transferred to the affiliate of Rapid Link and secured by the assets of Telenational.  (*Id.)*

The Amendment inserted a new Article 7 to the Share Exchange Agreement, titled "Conditions Subsequent."  (Ex. B Art. 7.)  This new section laid out a set of events subsequent to the initial Closing on which Blackbird's and "New Rapid Link's"[5] obligation to consummate the Subsequent Closing were conditioned.  (*Id.*)  Among the events upon which the Subsequent Closing was conditioned was the requirement that both New Rapid Link and Blackbird procure the required governmental and other third party consents listed in the schedules to the Share Exchange Agreement.  (Ex. B §§ 7.1(d), 7.2(e); *see also* Compl. ¶ 25.)  In addition, as a condition to Blackbird's obligation to consummate the Subsequent Closing, "[a]t the time of the Subsequent Closing, [Telenational] shall have a working capital balance greater than $0.00."  (*Id.* § 7.1(f); *see also* Compl. ¶ 25.)  The Amended Agreement could be terminated prior to June 30, 2010, if any of the conditions subsequent to the first closing listed in Article 7 of the

---

[5] An entity known as "New Rapid Link" was a placeholder in the Amended Agreement for the Rapid Link side of the transaction, because after the initial Closing, Rapid Link would be controlled by the Blackbird side of the transaction.  (*See* Compl. ¶ 32.)  After the first Closing, New Rapid Link would hold the Telenational assets that were to be transferred to the Blackbird side of the transaction in the Subsequent Closing.  (Compl. ¶ 24; Ex. B §§ 1.5(a)-(b).)

Amendment were incapable of being satisfied, so long as the terminating party had "used its commercially reasonable efforts" to consummate the transaction.  (*Id.* § 8.1(d).)

***The Closing and Subsequent Events***

On February 24, 2010, Blackbird, Rapid Link, the principal shareholders of both, and Mr. Prepaid consummated the first Closing under the Amended Agreement.  (*See* Compl. ¶¶ 23; *See* June 7, 2010 Letter, Ex. 1 at 2.)[6]  Blackbird acquired the Rapid Link common stock and with it assumed $1.25 million in debt to Laurus.  (*See id.* ¶ 32; Ex. B § 5.8.)  Upon the first closing, Rapid Link's management team, including CEO John Jenkins, resigned from Rapid Link and took over operational control of New Rapid Link and its Telenational operating assets.  (Compl. ¶ 25.)  Also on February 24, 2010, Jenkins and Laurus entered into an Indemnification Agreement.[7]  After the Closing, on June 7, 2010, Rapid Link changed its name to Spot Mobile.[8] (Compl. ¶ 23.) Therefore, as of June 7, 2010, Rapid Link's $1.25 million debt to Laurus became a liability of Spot Mobile.

After the initial Closing, Spot Mobile claims to have determined "that Telenational was not in a positive working capital position nor had it obtained its regulatory approvals." (Compl.

---

[6] This court may take judicial notice of Exhibit 1 because it was attached as an exhibit to Spot Mobile's opposition to LV's motion for summary judgment in lieu of complaint in New York State court, described in more detail below.  (*See* Holloway Decl. ¶ 2, Ex. 1 )  *Porrazzo* v. *Bumble Bee Foods, LLC*, No. 7:10-cv-04367-CV, 2011 WL 4552306, at *3 (S.D.N.Y. Sept. 30, 2011) ("[I]t is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss" ); *Kramer* v. *Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts.").

[7] Attached to the Holloway Declaration as Exhibit 2 is an executed version of the Indemnification Agreement, which the Court may consider because its substance is incorporated into and relied upon throughout the complaint.  *See Blue Tree Hotels Inv. (Canada), Ltd.* v. *Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

[8] The Amended & Restatement Certificate of Incorporation of Rapid Link Incorporated, effecting that name change was filed with the Secretary of the State of Delaware on June 7, 2010. (Holloway Decl. Ex. 3.)

¶ 44.)  On June 7, 2010, counsel for Blackbird sent a letter to Jenkins purporting to "exercis[e] its right to terminate" the Amended Agreement and avoid its obligation to consummate the Subsequent Closing.  That letter stated in relevant part:

> As you know, the Subsequent Closing is contingent upon the satisfaction of various conditions including, without limitation, obtaining applicable FCC and state regulatory approvals for the transfer of the Telenational Assets (see Section 7.1(d) of the Amendment) and the positive working capital requirement (see Section 7.1(f) of the Amendment).  If these conditions are not fully satisfied, Blackbird is not required to proceed with the Subsequent Closing.  It is clear that these conditions have not been satisfied and are incapable of being satisfied prior to the "outside" Subsequent Closing Date of June 30, 2010.  As a result of these failures of conditions precedent, it is not possible for Blackbird to perform under the Share Exchange Agreement and consummate the Subsequent Closing.  That portion of the Share Exchange Agreement is incapable of being enforced by law.

(Ex. 1 at 2.)  Consequently, the Subsequent Closing did not occur, and Spot Mobile neither acquired the Telenational assets nor assumed the remaining $1.85 million in debt to Laurus as contemplated by the Amended Agreement.[9]

### The State Court Litigation

On July 15, 2011, LV moved, in New York State court, for summary judgment in lieu of complaint against Spot Mobile, Mr. Prepaid and Zwebner for defaulting on the $1.25 million obligation to Laurus and, on November 16, 2011, that court granted LV's motion,  finding that defendants had defaulted on their payment obligations under the $1.25 million note.  (12/6/2011 Order, Ex. 4.)

---

[9] Although Spot Mobile does not specifically allege in the Complaint that the Subsequent Closing did not occur, that allegation is implicit; certain of Spot Mobile's claims only make sense if the Subsequent Closing did not occur.  For example, Spot Mobile contends that Grin "attempt[ed] to convince, and cajole Spot Mobile to proceed with a second closing by which it would reacquire the now looted Telenational entity along with significant debt owed to the Laurus [Defendants]."  (Compl. ¶ 42; *see also* Compl. ¶ 99 ("The result of which has left Rapid Link Shareholders without ONE RING and the Telenational core assets returns due to negative working capital and the looting of Telenational. [*sic*]")

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). Plausibility requires that the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. The inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950.  While a complaint's well-pleaded factual allegations must be accepted as true, "naked assertion[s]" devoid of "further factual enhancement" do not suffice. *Bell Atl. Corp*. v. *Twombly*, 550 U.S. 544, 557 (2007).  Instead, "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *In re MBIA, Inc. Sec. Litig.*, 700 F. Supp. 2d 566, 576 (S.D.N.Y. 2010) (citing *Twombly*, 550 U.S. at 555.)

**I.    SPOT MOBILE HAS FAILED TO ALLEGE FACTS SUFFICIENT TO SUSTAIN ITS BREACH OF CONTRACT CLAIM AND THAT CLAIM MUST BE DISMISSED**

Spot Mobile claims that the Laurus Defendants "intentionally and materially breached the Agreements and have failed and neglected to perform the terms conditions [sic] of said Agreements." (Compl. ¶ 56.)  Spot Mobile has wholly failed to allege facts that support such a claim.

The elements of a claim for breach of contract are (1) the existence of a contract, (2) due performance of the contract by plaintiff, (3) breach of the contract by defendant, and (4) damages resulting from the breach. *See Coastal Aviation, Inc.* v. *Commander Aircraft Co.*, 937 F Supp 1051, 1060 (S.D.N.Y. 1996), *aff'd* 108 F.3d 1369 (2d. Cir. 1997); *H-M Wexford LLC* v. *Encorp,*

*Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003).[10] In addition, "[a]s a general rule, privity or its equivalent remains the predicate for imposing liability for nonperformance of contractual obligations." *Smith* v. *Fitzsimmons*, 584 N.Y.S.2d 692, 695 (App. Div. 1992).  Spot Mobile's breach of contract claim fails for four independent reasons.

*First*, none of the Laurus Defendants is a party to the Amended Agreement.  It is well established that a party who is not a signatory to a contract cannot generally be held liable for breaches of that contract. *See Black Car & Livery Ins., Inc.* v. *H &W Brokerage, Inc.*, 813 N.Y.S.2d 751, 752 (App. Div. 2006); *Bellino Schwartz Padob Adver., Inc.* v. *Solaris Mktg. Grp., Inc.*, 635 N.Y.S.2d 587, 588 (App. Div. 1995).[11]  Spot Mobile's breach of contract claim against the Laurus Defendants fails on this fundamental premise.[12]

*Second*, even if any Laurus Defendant were a signatory to the Amended Agreement – which they are not – Spot Mobile has not alleged an actual breach of that agreement.[13]  Given the most generous reading, Spot Mobile's complaint identifies three purported breaches: (1) the "concealment of the indemnity agreement" between Laurus and Jenkins (Compl. ¶ 38); (2) the "fraudulent and deceitful transfer of Telenational to Jenkins" (*Id.* ¶ 53); and (3) the failure to

---

[10] While the Amended Agreement contains a choice-of-law provision designating the laws of Delaware as governing all matters arising out of or relating to the Amended Agreement, Ex. A to Compl. § 8.11, because none of the Laurus Defendants was a signatory to the contract, none can be bound by this, or any other, provision. *See* e.g. *Alliance Data Sys. Corp.* v. *Blackstone Capital Partners V L.P.*, 963 A.2d 746, 760 (Del. Ch. 2009), *aff'd* 976 A.2d 170 (Del. 2009) ("[T]he ordinary rule is that only the formal parties to a contract are bound by its terms.")

[11] Delaware law is not to the contrary.  *See Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P.* v. *Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999) ("It is a general principle of contract law that only a party to a contract may be sued for breach of that contract.")

[13] Assuming, counterfactually, that defendants were signatories to the Amended Agreement, the parties would be bound by the choice-of-law provision and the substantive law of Delaware would apply to the breach of contract claim.

"return Telenational to Spot Mobile with positive working capital" (*Id.* ¶ 48).  But Spot Mobile has failed to allege how any of those actions breached the Amended Agreement.

As an initial matter, to satisfy Federal pleading requirements, Spot Mobile must, at the very least, identify the provisions of the Amended Agreement that were allegedly breached.  *See Wolff* v. *Rare Medium, Inc.,* 210 F. Supp. 2d 490 (S.D.N.Y. 2002).  It has not done so.  That pleading failure, on its own, requires dismissal of Spot Mobile's breach of contract claim.  *See Shah* v. *Wilco Sys.*, 126 F. Supp. 2d 641, 652-3 (S.D.N.Y. 2000) (dismissing breach of contract claim because plaintiffs failed to identify contractual provisions that defendant breached).

In addition, an examination of the Amended Agreement reveals that defendants' alleged conduct was not in fact a breach of the Amended Agreement.  Nothing in the Amended Agreement required the disclosure of the Indemnification Agreement – it was simply not a subject of the contract.  (*See* Exs. A, B.)  Thus, this claim necessarily fails as a matter of law.  *See Goodrich* v. *E.F. Hutton Grp., Inc.*, 542 A.2d 1200, 1203-4 (Del. Ch. 1988) (dismissing breach of contract claim for failure to allege that contract "prohibited the challenged acts.")  Likewise, the allegation that Telenational was "fraudulent[ly] and deceitful[ly] transfer[ed]" to Jenkins is belied by the agreement itself.  As Spot Mobile itself alleges, "[i]n furtherance of the Agreements, [Telenational was] to be transferred to the New Rapid Link entity, which was to be controlled by Jenkins." (Compl. ¶ 25.)  Labeling the alleged transfer "fraudulent and deceitful" does not change the fact that Spot Mobile has alleged that the transfer was required by the Amended Agreement, and thus could not have breached that agreement.

Spot Mobile's claim that the defendants breached the Amended Agreement by failing to "return Telenational to Spot Mobile with positive working capital" likewise fails because that is not required by the agreement.  Rather, Spot Mobile's *obligation to consummate the transaction*

was *conditioned* on whether Telenational had a positive working capital balance at the

Subsequent Closing. (Ex. B § 7.1(f).)  In other words, the alleged failure of the defendants to

"return" Telenational with positive working capital was not a *breach* of the agreement, it only

excused Spot Mobile's obligation to acquire Telenational and assume its debt.  (*Id.* §§ 1.5(a),

7.1(f), 7.1(i).)  Indeed, that is precisely the position that Spot Mobile took when it chose to

"terminate" the Amended Agreement and not consummate the Subsequent Closing; having

concluded that Telenational had negative working capital as of February 24, 2010, and thus that

a condition to its obligations under the agreement had not been met, Spot Mobile decided not to

consummate the Subsequent Closing.  (Compl. ¶ 45.)  As a matter of settled Delaware law, the

failure of a condition precedent that relieves a party from its obligation to close is not a breach of

contract. [14]  *See, e.g., Weiss* v. *Nw. Broad. Inc.*, 140 F. Supp. 2d 336, 346 (D. Del. 2001).

 *Third*, despite Spot Mobile's conclusory allegation that it "fully performed all terms and

conditions of the [Amended Agreement] and Defendants have received the benefit thereof," Spot

Mobile has failed to allege facts that support this claim.  (Compl. ¶ 57.)  The Amended

Agreement listed a number of "conditions" that Spot Mobile had to satisfy, including obtaining

the necessary regulatory and other third party consents, to obligate New Rapid Link to

---

[14] Even assuming, contrary to settled law, that a breach of contract claim can arise from the failure of a condition precedent, Spot Mobile has not even adequately alleged that the working capital condition was not met.  Spot Mobile claims that a third party determined that Telenational had a "working capital deficiency" as of February 24, 2010.  (Compl. ¶ 45.)  The Amended Agreement, however, conditions the Subsequent Closing on Telenational having positive working capital *at the time of the Subsequent Closing.*  (Ex. B § 7.1(f).)  The Subsequent Closing never happened, but under the terms of the Amended Agreement, it could have been consummated any time on or before June 30, 2010.  (*Id.* § 1.6(d).)  Spot Mobile has not alleged that Telenational did not have positive working capital as of that date.

consummate the Subsequent Closing.  (*See* Ex. B § 7.2.)  Spot Mobile has not alleged facts

sufficient to show that it did in fact satisfy these conditions.  (*See id.*)[15]

Further, for Spot Mobile to "fully perform" under the Amended Agreement would

require that Spot Mobile not only acquire the Telenational assets but also assume the $1.85

million in debt owed to Laurus that was secured by those assets.  (Ex. B §§ 1.5(a), 7.1(i).)  Spot

Mobile does not and cannot allege that it in fact assumed that debt, and its breach of contract

claim fails for that reason as well.  *See Gregori* v. *90 William St. Dev. Grp. LLC*, No. 09 CV

4753 (GBD), 2010 WL 3001979, at *4 (S.D.N.Y. July 20, 2010) (citing *RCN Telecom Servs.* v.

*202 Ctr. St. Realty LLC*, 156 F. App'x 349, 350-51 (2d Cir. 2005) ; *Emmett Hickman Co., v.

Emilio Capano Developer, Inc.*, 251 A.2d 571, 573 (Del. Super. 1969).

*Fourth*, Spot Mobile has failed to allege any damages arising from the alleged breaches.

Spot Mobile makes only a wholly conclusory and illogical claim that "[b]y reason of the

foregoing, Plaintiff has been damaged in an amount not less than $3,000,000.00."  (Compl.

¶ 58.)  There is a complete absence of allegations in the Complaint as to what the anticipated

profit or full benefit to Spot Mobile would have been under the Amended Agreement, the

appropriate measure of contract damages.  *See* Williston on Contracts § 64:2 (4th ed. 2000).

And Spot Mobile has failed allege any facts regarding how the existence of the Indemnification

Agreement (or the alleged transfer of Telenational to Jenkins) caused it any damages.  Indeed,

regardless of the amount, Spot Mobile has not alleged facts that support how the alleged

breaches caused it any injury whatsoever.  On this basis alone, Spot Mobile's breach of contract

claim fails.  *See Chiste* v. *Hotels.com L.P.*, 756 F. Supp. 2d 382, 418 (S.D.N.Y. 2010) (applying

---

[15] For example, Spot Mobile has not alleged that it obtained the "Blackbird Required Consents"
that were a condition precedent to New Rapid Link's obligation to consummate the Subsequent
Closing.  (*See* Ex. A §; Ex. B §7.2(e).)

Delaware law to dismiss breach of contract claim for failure "to plead facts from which to infer that damages were suffered by the plaintiff as a result of the breach.")

For each of these four independent reasons, Spot Mobile's breach of contract claim fails on the pleadings and must be dismissed.

## II.    SPOT MOBILE FAILS TO STATE A CLAIM FOR FRAUD

Spot Mobile brings both a common law fraud claim and a securities fraud claim against the Laurus Defendants.  Both fail as a matter of law.

To state a claim under § 10(b) and Rule 10b-5, a plaintiff must plead that "the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff."  *Ganino* v. *Citizens Util. Co.,*, 228 F.3d 154, 161 (2d Cir. 2000); *In re Carter-Wallace, Inc. Sec. Litig.,* 150 F.3d 153, 155-56 (2d Cir. 1998), *aff'd,* 220 F.3d 36 (2d Cir. 2000).[16]  Each of those elements must be pleaded in accordance with the heightened pleading requirements of the PSLRA and Fed. R. Civ. P. 9(b) by "stating with particularity the circumstances surrounding fraud."  *ECA & Local 134 IBEW Joint Pension Trust of Chi.* v. *JP Morgan Chase & Co.*, 553 F.3d 187, 196 (2d Cir. 2009).

Spot Mobile alleges two bases for both its fraud claims: (1) that the defendants concealed the Indemnification Agreement between Laurus and Jenkins (Compl. ¶¶ 69, 76) and (2) that

---

[16] Because the elements of common law fraud under New York law are "substantially identical to those governing Section 10(b)," an "identical analysis applies" to both claims.  *Abu Dhabi Commer. Bank* v. *Morgan Stanley & Co., Inc.*, 651 F. Supp. 2d 155, 171 (S.D.N.Y. 2009).  *See also E*Trade Fin. Corp.* v. *MarketXT Holdings Corp.*, No. 04–12078 (ALG), 2006 WL 2864963, at * 10 (Bankr. S.D.N.Y. Sept. 29, 2006) (citing *Manela* v. *Garantia Banking Ltd.,* 5 F. Supp. 2d 165, 178-79 (S.D.N.Y. 1998)) ("The elements of common law fraud are largely the same as those of a Rule 10b-5 claim except there is no 'in connection with' requirement, and in the case of affirmative face-to-face misrepresentations, there is no 'use of the mails or any facility of a national securities exchange' requirement.")

certain unspecified statements made by Jenkins and found in the Amended Agreement were false (*Id.* ¶¶ 71, 77). Neither allegation meets the plausibility standard, both fall far short of the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b) and the further heightened pleading requirements of the PSLRA, and each fails as a matter of law.

**A.     Spot Mobile's Failure to Meet the Heightened Pleading Requirements of Fed. R. Civ. P. 9(b) and the PSLRA is Fatal to its Claims**

First and fundamentally, Spot Mobile has failed to allege, with requisite particularity, that the Laurus Defendants made misstatements or omissions of material fact, and on that basis alone, its fraud claims fail.

Spot Mobile has not identified a single actual statement that was fraudulent, instead relying on vague descriptions of "various communications and drafts of the Agreements." (Compl. ¶ 77.) Such allegations fail utterly to satisfy the heightened pleading requirements of Rule 9(b) and the PSLRA. To state a claim for relief based on a fraudulent misrepresentation, a plaintiff must (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. *In re MBIA,* 700 F. Supp. 2d at 577-578. Spot Mobile does not even attempt to state each of these elements with respect to any alleged misrepresentation, instead referring simply to "communications and drafts" of the Agreement "sent via email and mail." (Compl. ¶¶ 77-78; *see also* ¶ 71 ).[17]

In addition, where, as here, multiple defendants are asked to respond to allegations of fraud, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio* v. *Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987);

---

[17] The only actual "communications" alleged to have been made by any of the Laurus Defendants (*See* Compl. ¶¶ 42-43), all occurred long after the execution of the Amended Agreement and are therefore completely irrelevant to Spot Mobile's fraud claims.

13

*see also Gurfein* v. *Ameritrade, Inc.*, 411 F. Supp. 2d 416, 426 (S.D.N.Y. 2006) ("To this end, the complaint may not rely upon blanket references to acts and omissions by all of the defendants, for each defendant named in the complaint is entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he individually stands charged.") In no instance does the complaint allege (i) a specific alleged misstatement; (ii) made by a named individual; (iii) at an identified time and place; and (iv) in a particular form.[18] That lack of particularity fails to apprise each of the defendants of the specific fraudulent conduct alleged to be attributable to him, and should be dismissed for failing to meet the particularity requirements of Fed. R. Civ. P. 9(b).

Spot Mobile's fraudulent concealment claim fares no better.  The complaint alleges generally that "the material fact of [Jenkins'] indemnity agreement from the Laurus Entities" was "concealed," (Compl. ¶ 69), but the Complaint does not specifically allege when that purported omission was made, when it should have been disclosed, and what statement was made misleading by its omission.  Those particularized allegations are required to make out a fraudulent concealment claim, and without them, Spot Mobile's claim fails.  *See* 2-9 Moore's Federal Practice - Civil § 9.03 (To adequately plead a fraudulent omission, a plaintiff must "plead the type of facts omitted, where the omitted facts should have been stated, and the way in which the omitted facts made the representations misleading.").  *See also, Solow* v. *Stone*, 994 F. Supp. 173, 182 (S.D.N.Y. 1998).  Tellingly, the Indemnification Agreement that Spot Mobile alleges was "concealed," presumably during negotiation of the Share Exchange Agreement and its Amendment, was executed on the same day as the Closing – well after the execution of the Share Exchange Agreement and its Amendment.  (*See* Ex. 2.)  Falling far short of the heightened

---

[18] In the few instances where a speaker is identified (*see, e.g.* Compl. ¶¶ 41, 42, 71), the complaint does not even identify what was said, much less when, where, how and to whom.

pleading requirements imposed by Rule 9(b), Spot Mobile's fraudulent concealment allegations fail to even meet *Twombly*'s plausibility standard, and must be dismissed.

### B. Spot Mobile's Failure to Allege Scienter with the Particularity Required Under the PSLRA Mandates Dismissal of its Fraud Claims

Under the PSLRA, a complaint must allege "with particularity facts giving rise to a *strong inference* that the defendant[s] acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added). A plaintiff "can establish [fraudulent] intent either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Kalnit* v. *Eichler*, 264 F.3d 131, 138-9 (2d Cir. 2001). In either case, the inference "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

Spot Mobile's complaint is completely devoid of any allegations or specific facts that would support any plausible inference that the Laurus Defendants acted with the requisite scienter, much less the strong inference required by the PSLRA.[19] To the contrary, the allegations of fraudulent intent are facially inadequate, and to the extent a "scheme" is even alleged, it is incoherent.

First, Spot Mobile's scienter allegations consist almost entirely of conclusory allegations of fraudulent intent. (*See, e.g.* Compl. ¶ 78 ("the communications and drafts…were intended to

---

[19] Although the PSLRA's heightened pleading requirements for scienter apply only to federal securities claims, courts in this circuit have held that "[t]he pleading requirements for the knowledge - or scienter - element of common law fraud claims under New York law are similar to the pleading requirements for scienter under federal securities law." *Abu Dhabi*, 651 F. Supp. 2d at 171. As discussed *infra*, Spot Mobile's complaint fails to meet these heightened pleading requirements with respect to the Laurus Defendants and therefore the common law fraud claims should be dismissed as well.

and did mislead Plaintiff's shareholders"); ¶ 72 ("Jenkins' concealment of the material fact was intended by Jenkins, Grin, and the Laurus Entities to induce Plaintiffs into entering into the Agreements.")) Such allegations will not support a fraud or securities fraud claim. *See Shields* v. *Citytrust Bancorp, Inc.*, 25 F. 3d 1124, 1129 (2d Cir. 1994) ("conclusory allegations – that Defendants 'knew but concealed' some things, or 'knew or were reckless in not knowing' other things – do not satisfy the requirements of Rule 9(b)" but are "so broad and conclusory as to be meaningless").

Second, even if the factual allegations of the complaint are taken collectively, no inference of scienter could be reasonably drawn. Spot Mobile's theory seems to be that the Indemnification Agreement was a deliberate device designed by the Laurus Defendants to enable and assist Jenkins in his alleged looting of Telenational after the initial Closing (Compl. ¶ 83; *see also id.* ¶¶ 39-42, 50). Spot Mobile alleges that the Laurus Defendants' ultimate aim was to transfer to Spot Mobile at the Subsequent closing "the now looted Telenational entity along with significant debt to the Laurus entities." (Compl. ¶ 42.) There is no conceivable reason why such a ruse would benefit the Laurus Defendants, and Spot Mobile has alleged none. As part of the Subsequent Closing, the new owners of Rapid Link were to assume $1.85 million in debt owed by Telenational to Laurus, secured by the Telenational operating assets. Common sense dictates that it would not benefit Laurus to permit Jenkins to strip "any positive equity or meaningful value" from the collateral that secured its loans. (Compl. ¶ 40.) Far from supporting a "strong inference" of scienter, Spot Mobile's allegations of motive are nonsensical, and certainly do not support the strong inference of scienter required to survive a motion to dismiss.[20]

---

[20] Indeed, Spot Mobile's allegation that the very existence of an Indemnification Agreement suggests a nefarious conspiracy is undermined by the very terms of the Share Exchange Agreement. Attached to the agreement as Exhibit A is a Management Agreement, which

C.      **Spot Mobile's Fraud Claims Fail as a Matter of Law**

1.      Spot Mobile's Misrepresentation Claim is Redundant of its Breach of
Contract Claim and Should Be Dismissed

Even if Spot Mobile had pleaded the elements of its fraudulent misrepresentation claim

with the necessary particularity, it must nevertheless be dismissed as it is duplicative of its

breach of contract claim.  The only conceivable fraudulent misrepresentation claim that can be

gleaned from the complaint is that the defendants promised to return Telenational to Spot Mobile

as part of the Subsequent Closing and then did not.  (Compl. ¶¶ 48, 77.)  And the only damages

Spot Mobile alleges were caused by that conduct are $3,000,000 allegedly arising from "the

failure to reacquire Telenational." (Compl. ¶¶ 29, 74, 80.)  That claim is not based on "a breach

of duty separate from, or in addition to, a breach of the contract," *First Bank of the Ams.* v.

*Motor Car Funding, Inc.*, 690 N.Y.S.2d 17, 21 (App. Div. 1999), and does not allege "damages

in addition to those they could have anticipated in the event of a breach." *Wendorf* v. *MCI*

*Telecomms. Corp.*, No. 92 Civ. 1836 (KTD), 1993 WL 119785, at *3 (S.D.N.Y. Apr. 12, 1993).

Therefore it cannot exist alongside Spot Mobile's breach of contract claim.  *See J.A.O.*

*Acquisition Corp.* v. *Stavitsky*, 745 N.Y.S.2d 634, 639 (Sup. Ct. 2001) ("A fraud claim should be

dismissed as redundant when it merely restates a breach of contract claim, i.e., when the only

fraud alleged is that the defendant was not sincere when it promised to perform under the

contract.") (quoting *First Bank of the Ams.,* 690 N.Y.S.2d at 20-21); *Wendorf*, 1993 WL 119785

at *3 ("Failure of the plaintiff to allege damages flowing from the asserted fraud that are not

---

empowered Blackbird to manage the Telenational core business between signing and closing, at
which point the Telenational assets would be transferred to Blackbird.  Under the terms of that
management agreement, Rapid Link agreed to indemnify *Blackbird* for any liabilities or losses
incurred as a result of its management of Telenational during that interim period. (*See*
Management Agreement at ¶ 11 ("Indemnification").)

encompassed within the contract claim, indicates that the fraud claim is merely redundant and should be dismissed as indistinguishable from the breach of contract claim.")

> 2.      Defendants Were Under No Duty to Disclose the Indemnification Agreement.

Spot Mobile's fraudulent concealment claim also fails because Spot Mobile has not alleged facts to support any claim that the Laurus Defendants had a duty to disclose the existence of the Indemnification Agreement.  Failure to disclose even material facts is not actionable unless the defendant has a duty to disclose those facts.  *See Progressive Cas. Ins. Co.* v. *C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 47 (2d Cir. 1993); *Basic Inc.* v. *Levinson*, 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5").  Such a duty can arise out of a fiduciary relationship, or because a previous statement is made misleading by the alleged omission, but Spot Mobile alleges neither.   At no time – neither during the negotiations of the Amended Agreement nor after the first Closing – were Spot Mobile and the Laurus Defendants alleged to be anything other than participants in an arm's-length business transaction, and Spot Mobile has not identified any statement made misleading by the alleged failure to disclose the existence of the Indemnification Agreement.   Its fraudulent concealment claim therefore fails.  *See Henneberry* v. *Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 550 (S.D.N.Y. 2007) (citing *Nat'l Westminster Bank, U.S.A.* v. *Ross*, 130 B.R. 656, 679 (S.D.N.Y. 1991); *Rosenblatt* v. *Christie, Manson & Woods Ltd.*, No. 04 Civ. 4205 (PKC), 2005 WL 2649027, at *10 (S.D.N.Y. Oct. 14, 2005).

> 3.      Spot Mobile Has Failed to Allege Damages

Third, as with all of its claims, Spot Mobile has failed to allege facts that indicate how the alleged fraud caused it any damages.  *See supra* at 11-12.  As with its contract claim, Spot Mobile makes only the wholly conclusory claim that "[a]s a consequence of Defendants' fraud,

deceit and collusion, and Plaintiff has suffered damages and is entitled to an award of monetary damages in an amount not less than $3,000,000.00 [sic]." (Compl. ¶¶ 74, 80.)  Spot Mobile also alleges that "[t]he failure to reacquire Telenational would cause significant monetary damage to Rapid Link/Spot Mobile" (Compl. ¶ 29), but Spot Mobile has failed to allege any facts regarding how the alleged misrepresentations or omissions proximately caused it not to acquire Telenational, or how the failure to acquire Telenational caused Spot Mobile's alleged $3,000,000 in damages.  That failure is fatal to both Spot Mobile's Rule 10b-5 and common law fraud claims.  *See Suez Equity Investors, L.P.* v. *Toronto-Dominion Bank*, 250 F.3d 87, 96 (2d Cir. 2001) (To satisfy the causation requirement in a securities fraud claim, the plaintiff must allege both that "the fraud caused the plaintiff to engage in the transaction and that it also caused the harm actually suffered."); *Ryan* v. *Hunton & Williams*, No. 99-CV-5938 (JG), 2000 WL 1375265, at *4, (E.D.N.Y. Sept. 20, 2000) (citing *Bennett* v. *U.S. Trust Co.*, 770 F.2d 308, 316 (2d Cir. 1985)).

III.   **SPOT MOBILE LACKS STANDING TO SUE FOR CORPORATE WASTE AND SELF-DEALING AND IN ANY EVENT, HAS FAILED TO SUFFICIENTLY PLEAD SUCH A CLAIM**

Spot Mobile claims that the Laurus Defendants assisted Jenkins in wasting corporate assets "to the detriment of the Spot Mobile [sic] for [Jenkins'] own personal gain." (Compl. ¶ 82.)  Spot Mobile has failed to state a claim for two independent reasons.

*First*, Spot Mobile does not have standing to bring a corporate waste claim.  The only allegations that could conceivably support a corporate waste claim concern the alleged looting of *Telenational*, not Spot Mobile.  (*See, e.g.*, ¶¶ 39, 40, 99.)  This alleged looting purportedly occurred after the initial Closing, when Jenkins was in control of Telenational and after the Rapid Link stock had been transferred to Blackbird – at a time when Spot Mobile did not even own an interest in Telenational.  (*See id.* ¶¶ 25, 30, 39.)  As a result, Spot Mobile lacks standing

to assert this claim. *See Ince & Co.* v. *Silgan Corp.*, No. 10941, 1991 Del. Ch. LEXIS 20, at *20 (Del. Ch. Feb. 7, 1991) ("Plaintiffs, who are shareholders of Silgan, do not have standing to assert corporate waste claims for payments made by Silgan Holdings.").[21]

*Second*, even if Spot Mobile had standing to assert a waste claim, it has failed to adequately do so.  It is incumbent on any plaintiff making a claim for waste or self-dealing to identify a transaction that was improper and then allege facts that, if true, establish that "'the economics of the transaction were so flawed that no disinterested person of right mind and ordinary business judgment could think the transaction beneficial to the corporation.'" *In re Fedders N. Am., Inc.*, 405 B.R. 527, 549 (Bankr. D. Del. 2009) (quoting *Harbor Fin. Partners* v. *Huizenga*, 751 A.2d 879, 893 (Del. Ch. 1999).)  Spot Mobile has not identified an improper transaction, relying instead on unspecified claims of "loot[ing]" and "removing any positive equity or meaningful value."[22]  (*See, e.g.*, Compl. ¶¶ 39-40.)  Without even identifying a single

---

[21] Any claim based on the alleged looting of Telenational belongs to the corporation – *i.e.*, Telenational and/or One Ring. *See Shearin* v. *E.F. Hutton Grp.*, 652 A.2d 578, 591 (Del. Ch. 1994); *see also Strasenburgh* v. *Straubmuller*, 146 N.J. 527, 551 (1995) ("Claims of waste … will always be derivative claims.").  Spot Mobile has not brought these claims derivatively on behalf of Telenational or New Rapid Link, nor could it; Spot Mobile is not – and has not alleged that it ever was – a shareholder of Telenational or New Rapid Link. *See Richelson* v. *Yost*, 738 F. Supp. 2d 589, 598 (E.D. Pa. 2010) ("[U]nder Delaware law, the party seeking to sue derivatively must also be a shareholder throughout the duration of the litigation.") (citing *Parfi Holding AB* v. *Mirror Image Internet, Inc.*, 954 A.2d 911, 935 (Del. Ch. 2008)).

[22] Near the end of the Complaint, under the heading of the aiding and abetting breach of fiduciary duty count, Spot Mobile claims that Jenkins "divert[ed] funds from Telenational to ONE RING NETWORKS." (Compl. ¶ 99.)  The allegation was not incorporated by reference into Spot Mobile's corporate waste and self-dealing claim (*see id.* ¶ 81 (incorporating ¶¶ 1-80 into waste count)), but to the extent the Court considers it for that count, it also does not make out a waste claim.  That nonspecific allegation (1) alleges no facts regarding the unreasonableness of the alleged transfer; (2) is facially nonsensical (earlier in the complaint, Spot Mobile defined "Telenational" as consisting of both Telenational and One Ring, so it is impossible to discern what entity Spot Mobile contends made or received the alleged transfers); and (3) fails to allege how Spot Mobile would have been harmed by the alleged diversion, because if the Subsequent Closing had occurred, Spot Mobile would acquire both Telenational and One Ring.

example of such alleged looting, much less facts regarding the economics of the alleged

transfers, Spot Mobile has wholly failed to allege facts that would support a waste claim,

therefore, this claim must be dismissed. *See Criden* v. *Steinberg*, No. 17082, 2000 WL 354390,

at *3 (Del. Ch. Mar. 23, 2000) (corporate waste claims dismissed where plaintiff failed to allege

facts that, if true, establish that the defendant directors "authorize[d] an exchange that is so one

sided that no business person of ordinary, sound judgment could conclude that the corporation

has received adequate consideration.").

## IV.     SPOT MOBILE'S AIDING AND ABETTING CLAIM MUST BE DISMISSED

Spot Mobile claims that the Laurus Defendants aided and abetted Jenkins' alleged

breaches of fiduciary duties owed to Spot Mobile.  To state a claim for aiding and abetting a

breach of fiduciary duty under New York law,[23] Spot Mobile must allege (1) a breach of

fiduciary duty by the primary violator; (2) actual knowledge of the breach by another;

(3) knowing inducement or participation in the breach through "substantial assistance" to the

primary violator; and (4) damages caused thereby. *Sharp Int'l Corp.* v. *State St. Bank & Trust

Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 50 (2d Cir. 2005).  Spot Mobile's aiding and abetting

claim fails for two reasons.

First, the Complaint fails to allege a primary breach by Jenkins and as a result, there can

be no secondary claim against the Laurus Defendants for aiding and abetting that breach.  To

state the necessary underlying claim for breach of fiduciary duty, Spot Mobile must allege facts

that show the existence of a fiduciary duty and the breach of that duty.  *See, e.g., Official Comm.*

---

[23] Delaware law governs Spot Mobile's underlying breach of fiduciary duty claims pursuant to
the internal affairs doctrine.  *See, e.g., Pereira* v. *Farace*, 413 F.3d 330, 341 (2d Cir. 2005). But
claims for aiding and abetting breaches of fiduciary duty are subject to "normal" interest analysis
principles, so New York law applies to that claim.  *See Buchwald* v. *Renco Grp., Inc. (In re
Magnesium Corp. of Am.)*, 399 B.R. 722, 742-43 (S.D.N.Y. 2009).

*of Unsecured Creditors* v. *Bay Harbour Master Ltd.* (*In re BH S&B Holdings, LLC*), 420 B.R. 112, 147 (Bankr. S.D.N.Y. 2009), *aff'd as modified*, 807 F. Supp. 2d 199 (S.D.N.Y. 2011) (citing *York Linings* v. *Roach*, No. 16622-NC, 1999 WL 608850, at *2  (Del. Ch. July 28, 1999)).  Spot Mobile has alleged neither.  Jenkins never had – and is never alleged to have had – a fiduciary relationship with Spot Mobile.  During the negotiations and execution of the Amended Agreement, Jenkins was involved in arm's-length business negotiations *against* Spot Mobile and its investors.  (*See* Compl. ¶¶ 13, 16, 17; *see generally* Ex. A, Ex. B.)  Parties engaged in arm's-length negotiations do not owe one another fiduciary duties.  *See Forsythe* v. *ESC Fund Mgmt. Co. (U.S.)*, C.A. No. 1091-VCL, 2007 WL 2982247, at *10 (Del. Ch. Oct. 9, 2007) ("a straightforward, arm's-length commercial relationship arising from contract does not give rise to fiduciary duties").  *See also McMahon* v. *New Castle Assocs.*, 532 A.2d 601, 605 (Del. Ch. 1987).

   Spot Mobile attempts to obscure Jenkins' relationship with Rapid Link and Spot Mobile by stating generally that, "[a]s CEO of Rapid Link at the time the foregoing Agreements were executed and transactions consummated, Jenkins had fiduciary duties to the shareholders and investors of Rapid Link." (Compl. ¶ 49.)  However, after the initial Closing, Jenkins' association with Rapid Link ceased; ownership of Rapid Link was transferred to the Blackbird investors, while Jenkins assumed duties with *New* Rapid Link – an entity with no legal relationship with Rapid Link, running Telenational in anticipation of the Subsequent Closing.  (*Id.* ¶¶ 22-25.) Clearly, Spot Mobile has failed to plead that Jenkins ever occupied a position of trust such that he owed a fiduciary duty to Spot Mobile.  Therefore, it has not and cannot allege a breach of fiduciary duty, and its aiding and abetting claim against the Laurus Defendants necessarily fails. *See Lefkowitz* v. *Bank of N.Y.*, 676 F. Supp. 2d 229, 263 (S.D.N.Y. 2009) (because "plaintiff

[did] not plead a cognizable primary fiduciary breach . . . . her claim for aiding and abetting those purported breaches must also fail.").[24]

Second, the Complaint does not allege any facts showing that the Laurus Defendants "proximately caused the harm . . . on which the primary liability is predicated." *Jordan (Bermuda) Inv. Co., Ltd.* v. *Hunter Green Invs. LLC*, 566 F. Supp. 2d 295, 300 (S.D.N.Y. 2008); *see also Sharp Int'l Corp.*, 403 F.3d at 51; *Musalli Factory for Gold & Jewelry* v. *JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 25 (S.D.N.Y. 2009). In fact, as with its other claims, Spot Mobile has wholly failed to allege any facts that could show it was harmed in *any way* by the alleged breach, and certainly has not alleged that it was injured as "a direct or reasonably foreseeable result of the conduct complained of." *Morin*, 711 F. Supp. at 112.

## V.   BECAUSE SPOT MOBILE'S TORT CLAIMS FAIL AS A MATTER OF LAW, ITS CONSPIRACY CLAIM MUST ALSO BE DISMISSED

Spot Mobile's conspiracy claim fails because each of its underlying claims fails as a matter of law. Conspiracy is not an independent tort under New York Law. *Kirch* v. *Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) ("New York does not recognize an independent tort of conspiracy") (citing *Alexander & Alexander of N.Y., Inc.* v. *Fritzen*, 68 N.Y.2d 968, 969 (1986).) Instead it is a secondary claim that "'cannot stand alone' and must be dismissed if the underlying independent tort has not been adequately pleaded." *Gladstone Bus. Loan, LLC* v. *Randa Corp.*, No. 09 Civ. 4255 (LMM), 2009 WL 2524608, at *6 (S.D.N.Y. Aug. 17, 2009),

---

[24] To the extent that Spot Mobile's claim is based on the alleged looting of Telenational by Jenkins (*see* Compl. ¶ 95), that claim fails for the same reason that the corporate waste and self-dealing claim fails: Spot Mobile does not allege that it owns or ever owned any interest in Telenational, and thus lacks standing to assert a fiduciary duty claim for harm to Telenational. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[P]laintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'") (internal citations omitted).

*quoting Romano* v. *Romano*, 767 N.Y.S.2d 841, 842 (App. Div. 2003).  Because Spot Mobile's underlying claims all fail as a matter of law, its conspiracy claim against the Laurus Defendants necessarily fails as well.

Furthermore, even if Spot Mobile had sufficiently alleged any of its underlying claims, to properly allege vicarious liability under a conspiracy theory, Spot Mobile must also allege "'(1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.'"  *Ho Myung Moolsan Co.* v. *Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 256 (S.D.N.Y. 2009) (quoting *Kottler* v. *Deutsche Bank AG*, 607 F. Supp. 2d 447, 463 (S.D.N.Y. 2009)).  At best, the complaint pleads only "labels and conclusions and a formulaic recitation of the elements" of conspiracy, not any of the necessary predicate facts, and should therefore be dismissed.  *In re MBIA*, 700 F. Supp. at 576; (Compl. ¶¶ 59-67).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order dismissing with prejudice all claims against them, and for such other and further relief as is just and proper.

Dated:   New York, New York                Respectfully Submitted,
         March 27, 2012

                                           **BRUNE & RICHARD LLP**

                                           By:   /s/  Hillary Richard
                                                 Hillary Richard
                                                 Jessica R. Holloway
                                                 Matthew Popowsky
                                                 BRUNE & RICHARD LLP
                                                 80 Broad Street
                                                 New York, New York 10004
                                                 (212) 668-1900

                                                 *Attorneys for LV Administrative
                                                 Services, Inc., Valens Offshore SPV II,
                                                 Corp., Valens U.S. SPV I, LLC, and
                                                 David Grin*

                                           **WOLLMUTH MAHER & DEUTSCH LLP**

                                           By:   /s/  Randall R. Rainer
                                                 Randall R. Rainer
                                                 Adam M. Bialek
                                                 WOLLMUTH MAHER & DEUTSCH
                                                 LLP
                                                 500 Fifth Avenue
                                                 New York, New York 10110
                                                 (212) 382-3300

                                                 *Attorneys for Laurus Master Fund, Ltd.
                                                 (In Official Liquidiation)*